IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**MILER SMITH**                                                                                                   **PLAINTIFF**

**VS.**                       **CASE NO. 4:17CV00342 PSH**

**NANCY A. BERRYHILL, Commissioner,**
   **Social Security Administration**                                       **DEFENDANT**

**ORDER**

Plaintiff Miler Smith ("Smith") appeals the final decision of the Commissioner of the Social Security Administration (defendant "Berryhill") to deny his claim for Supplemental Security Income ("SSI"). Smith contends the Administrative Law Judge ("ALJ") erred in: (1) failing to find him disabled pursuant to Rule 201.14 of Table I, Subpart P, App. 2Regulation #4 ("Rule 201.14"); (2) assessing his credibility; (3) relying upon an inadequate hypothetical question posed to the vocational expert; (4) failing to apply the "treating physician's" rule; (5) failing to fully develop the record; and (6) failing to consider his impairments in combination. The parties ably summarized the medical records and the testimony given at the administrative hearing, which was conducted on July 16, 2015. The Court has carefully reviewed the record to determine whether there is substantial evidence to support Berryhill's decision. 42 U.S.C. § 405(g). The relevant period to be considered is from September 12, 2013, when Smith filed his application, through October 1, 2015, the date the Commissioner issued his decision.

*The Administrative Hearing:* Smith was 49 years old at the time of the administrative

1

hearing. He testified he was a high school graduate, with additional schooling which certified him as a welder, and does not have a driver's license. He served in the military from 1985 to 1987 and receives medical care at the Veteran's Administration Hospital ("VA"). He stated he last worked in 2008 due to chronic pain. His pain, according to Smith, was most severe in his back, but also present in his neck and shoulder. He stated he had "pain all the time, right around my neck, shoulders, back, down to the bottom of my feet," and has occasional spasms in his lower back. (Tr. 430). Smith rated the pain as 8 on a 1-10 scale. Smith noted he had a motor vehicle accident in 2008,[1] broke his left ankle in 2012, and broke his right ankle in 2015. At the time of the hearing, Smith said a back fusion surgery was imminent. Smith indicated he dealt with the pain via steroid shots, having received between 300 and 400 of such shots. He also stated he used a cane when he left his house, and has done physical therapy for his right ankle and back. Smith testified he also suffered from PTSD, bipolar disorder, stomach problems, high blood pressure, shortness of breath, and sleep problems.

Smith acknowledged past problems with drugs and alcohol, and stated he was "clean" from drugs for the past six years. (Tr. 407). Smith, although currently in substance abuse treatment for alcohol, conceded he "occasionally takes a drink." (Tr. 408). He estimated he drank alcohol maybe twice a week, and drank the night before the administrative hearing. The alcohol treatment classes were weekly meetings, and Smith also testified to attending parenting classes to aid in dealing with his daughter, who was thirteen.

Some confusion surrounded Smith's testimony about attending Pulaski Technical College in 2014. Smith twice indicated he attended the school for a month in January of 2014, then

---

[1] Smith stated he saw a chiropractor after the accident for injuries to his lumbar and cervical spine.

conceded that the records might show he attended "around about" a full semester. (Tr. 423).

A vocational expert, Charles Dwight Turner ("Turner"), testified Smith could not perform his past relevant work. Smith's counsel asked Turner to assume a hypothetical worker of Smith's age and background, with the ability to do sedentary work, use a cane, and experiencing pain and discomfort which would impact his ability to be reliable and dependable for at least one third of the working time. Turner identified no available jobs for such a worker. The ALJ then posed a hypothetical question, asking Turner to assume a hypothetical worker of Smith's age and background, with the ability to do light work with the following restrictions: occasional postural limitations on stooping, crouching, bending, kneeling, crawling, and balancing; no working from ropes, ladders, and scaffolding; limited to work which is simple, routine, and repetitive; and limited to work where supervision is simple, direct, and concrete. Turner indicated such a worker could perform the jobs of shotgun shell inspector and sales attendant. A second hypothetical question was posed by the ALJ, assuming the same parameters except that the hypothetical worker could maintain frequent contact with coworkers and supervisors, and occasional contact with the public. Turner indicated that the shotgun shell inspector job would still be available to the worker as described in the second hypothetical scenario. In addition, the jobs of machine tending and bench press operator would be available. The ALJ altered the hypothetical terms again, asking the ALJ to consider a worker with the same restrictions but able to perform sedentary, rather than light, work. According to Turner, such a worker could perform the jobs of fishing reel assembler and table worker. (Tr. 448-456).

*The ALJ's Decision:* In his October 1, 2015, decision, the ALJ found Smith had severe impairments of depression disorder, personality disorder, substance abuse disorder, obesity, and

degenerative joint disease of his shoulder and hip. The ALJ held that Smith did not meet a listed impairment. In conjunction with the analysis regarding a listing, the ALJ considered the "paragraph B" criteria and found the following: Smith had mild limitations in activities of daily living, moderate limitations in social functioning, moderate difficulties with regard to concentration, persistence or pace, and no episodes of decompensation. The ALJ determined Smith had the residual functional capacity ("RFC") to perform sedentary work with the following restrictions; no more than occasional stooping, crouching, bending, kneeling, crawling, and balancing; never climbing ladders, ropes, or scaffolds; no more than simple, routine and repetitive tasks with supervision that is simple, direct, and concrete; no more than frequent contact with supervisors and coworkers; and no more than occasional contact with the general public.

The ALJ found Smith "not entirely credible," citing many of the relevant factors he assessed in coming to this conclusion. (Tr. 376). For example, the ALJ noted Smith's work history was not strong, his attendance at Pulaski Technical College was at odds with his "profound subjective allegations," his statements regarding alcohol usage were inconsistent, his own doctors found him to be deceptive and malingering, his estimation of the number of steroid injections was "significantly overstated," and his mental health professionals also noted malingering and exaggerating.

The ALJ also thoroughly reviewed the medical findings by both treating and consulting examiners, as well as the findings of the state agency physicians. The ALJ specifically addressed the opinion of Dr. Oboma Asemota ("Asemota"), who found Smith had a "moderate disability." (Tr. 380). The ALJ accorded "little weight" to Asemota, finding the opinion mirrored Smith's subjective allegations, was based upon mixed clinical findings, and did not contain a clear function by function assessment of Smith's abilities. (Tr. 380). The ALJ also assigned only "partial weight"

4

to the opinions of the state agency physicians, who opined Smith could perform the full range of light work. (Tr. 379). Relying upon the testimony of Turner, the ALJ concluded Smith was not disabled. (Tr. 369-384).

We now address Smith's arguments.

**ALJ Error in Failing to Find Him Disabled Pursuant to Rule 201.14:**

Born on June 17, 1966, Smith was eleven months shy of turning 50 when his administrative hearing was held on July 16, 2015. Smith contends that if he were 50, with a high school education and no transferable work skills, and had an RFC of sedentary, then Rule 201.14 would direct a finding of disability. Smith further argues, citing 20 C.F.R. § 404.963(b), that age categories are not to be applied mechanically in borderline situations. Therefore, he urges that Rule 201.14 directs a finding of disability for him.

While Smith is correct in stating that age categories should not be mechanically applied in borderline situations, he is incorrect in claiming that he fits within the borderline category. First, the relevant regulation, found at 20 C.F.R. § 404.1563(b), provides that mechanical application of the age category will not apply if a claimant is "within a few days to a few months of reaching an older age category." Smith does not fit within this exception – he is not a borderline case. This conclusion is reinforced by the Eighth Circuit Court of Appeals:

> Second, Byes's age was not borderline. When the ALJ issued the decision, Byes was almost eight months away from his 45th birthday. Because the borderline rule takes into account several factors besides age, there is no bright line for how many months constitute a borderline case. *Phillips v. Astrue,* 671 F.3d 699, 703–04 (8th Cir.2012). However, eight months is too distant to be borderline. *See Bowie,* 539 F.3d at 397 (claimant less than two months from birthday is not borderline); *Lockwood,* 616 F.3d at 1072–74 (claimant only one month and three days from birthday is not borderline); *Van Der Maas v. Commissioner of Social Sec.,* 198 Fed.Appx. 521, 528 (6th Cir.2006) (taking into account all factors surrounding claimant's application, 55 days is not borderline); *Roberts v.*

5

> *Barnhart,* 139 Fed.Appx. 418, 420 (3d Cir.2005) (persons within five to six months of their birthday are not borderline); *Lambert v. Chater,* 96 F.3d 469, 470 (10th Cir.1996) (seven months short of birthday is not borderline). The most favorable decision—holding that four months was borderline—comes from this court, and does not aid Byes. *Phillips,* 671 F.3d at 703–04.

*Byes v. Astrue*, 687 F.3d 913, 918 (8th Cir. 2012).

The eleven month gap between the hearing date and Smith's 50th birthday is too great to fit within the borderline definition, and substantial evidence supports the ALJ's decision in this regard.

### ALJ Error in Assessing his Credibility:

In our recitation of the ALJ's decision, the credibility factors which he considered were cited. Smith argues these credibility findings were inadequate and insufficient. To support this argument, he recites many of his subjective allegations, such as his own rating of his pain as 8 on a 1-10 scale, his assertion that he took 300-400 steroid shots, and his own description of limited daily activities. However, it is not appropriate to prove credibility by appealing to subjective statements. Instead, the proper inquiry is whether substantial evidence supports the ALJ's credibility analysis. In this instance, the ALJ considered in detail many of the pertinent factors. *See Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). The ALJ's thorough consideration of the objective medical evidence, Smith's inconsistent statements, and medical personnel's notations of drug-seeking behavior, malingering, and exaggeration, are all valid reasons to discount Smith's subjective assertions. Substantial evidence supports the credibility determination of the ALJ.

### ALJ Error in Relying upon an Inadequate Hypothetical Question Posed to Turner:

Smith faults the hypothetical question posed to Turner, contending the proper question should have been the question posed to Turner by Smith's attorney. This question assumed a worker who could perform sedentary work, needed to use a cane to ambulate, and experienced severe pain and discomfort precluding him from being a reliable and dependable worker for at least one third of the work day. Smith's argument that the ALJ chose the wrong question is simply another way of saying the ALJ's RFC determination, which was incorporated into the hypothetical question which he ultimately relied upon, was wrong. As a result, we consider if the ALJ's RFC determination is supported by substantial evidence.

There is no error in the RFC conclusion reached by the ALJ. The ALJ is not obligated to base his RFC opinion upon a claimant's subjective statements, nor is he obligated to build his RFC determination around the opinion of a single medical care professional to the exclusion of others. Instead, it "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). We have already reviewed the ALJ's credibility assessment, finding it was thorough and supported by substantial evidence. Credibility of the claimant is one piece of the RFC puzzle. Here, the ALJ properly considered all the pieces, including a comprehensive look at the objective medical evidence and the opinions of medical personnel. More than substantial evidence supports the ALJ's RFC formulation, and there was accordingly no error in the hypothetical questions posed by the ALJ, or in the reliance upon the answers which flowed from the questions.

**ALJ Error in Failing to Apply the "treating physician's" Rule:**

Smith contends a treating physician, Dr. Archimedes Ramirez ("Ramirez"), opined Smith could not work in April 2015. Smith faults the ALJ for not mentioning Ramirez' opinion and according it great weight, as required under the "treating physician's" rule. Smith is correct that a treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight. Such an opinion may be discounted or even disregarded where other medical assessments are supported by better or more thorough medical evidence. *Fentress v. Berryhill*, 854 F.3d 1016 (8th Cir. 2017). However, before examining the ALJ's failure to consider Ramirez' statement, we must first consider the nature of the Ramirez entry in the medical records.

Following an April 2015 examination, Ramirez recorded notes about the visit. (Tr. 2900-2903). He entered data under the headings "Physical Examination," "Assessment and Diagnosis," and "Recommendation and Plan." Under these headings, Ramirez recorded: Smith is well-developed, well-nourished, and in no distress, with a herniated disc, a history of gastroenteritis, a nonspecific disorder of a kidney and ureter, chronic neck and shoulder pain, and hypertension, nicotine and alcohol dependence. Ramirez recommended that Smith have an MRI of the cervical spine, stop smoking, manage his weight, and do at least 15 minutes twice a day of core strengthening exercises, along with aerobics such as recumbent bike or aquatic water walking exercises. (Tr. 2902-2903). In these sections of his notes, Ramirez did not opine that Smith was unable to work. Indeed, his notes are consistent with the notion that Smith's impairments would not preclude sedentary work. For example, Ramirez noted that Smith's "left leg pain seems to be worse with walking and standing activities." (Tr. 2902).

Ramirez are made entries in his notes under the heading "History of Present Illness."

8

The statements under this heading consist of Smith's reports of his medical history and current abilities. In part, Smith provided the following information:

> He states that his back and neck pain started following a motor vehicle accident in 2008. He stated that his back pain and leg pain generally are worse with weightbearing activities. When he walks within a few feet he starts having back and right leg pain, and when he stands he has back and right leg pain. Right now most of his symptoms is right leg pain. It is about 8/10, and the back pain is 6/10. The symptoms have altered his lifestyle. He cannot work. He has trouble sitting, standing, and walking. He has no bowel and/or bladder sphincter problems. He has gained weight. He is 5 feet 10 inches at 220 pounds. He used to weigh 170 pounds about two to three years ago. The patient stated that he last worked as a welder in 2008.
>
> He is now trying to apply for Social Security Disability and has been turned down several times.

(Tr. 2900).

Reading Ramirez' notes in context, it is incorrect to state that Ramirez opined that Smith could not work. Instead, Ramirez recorded Smith's version of his impairments. Therefore, the ALJ did not err in neglecting to account for the "opinion" of Ramirez. Even if Ramirez had opined that Smith could not work, such a statement is not a medical opinion and is not entitled to special deference since such an opinion intrudes on the issues which the ALJ is to decide. *Ellis v. Barnhart*, 393 F.3d 988 (8th Cir. 2005). There is no merit to this claim.

**ALJ Error in Failing to Fully Develop the Record:**

Smith argues the ALJ "apparently did not fully understand or felt the medical evidence was insufficient to show the Plaintiff did not have a mental severe impairment." Plaintiff's brief at 9. As a result, Smith claims the ALJ was obligated to schedule a mental consultative examination, and the case should be remanded to do so. This argument is without merit. The ALJ explicitly found Smith to have severe mental impairments of depression disorder and

9

personality disorder.  Some of the RFC restrictions[2] imposed by the ALJ directly correspond with Smith's mental impairments.  There was no apparent need for additional development of the five-volume record.  Smith fails to demonstrate how the record was inadequate and how additional reports would cure the inadequacy.  The objective medical evidence in this case was ample and the ALJ's decision was well-informed.  *See Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (ALJ not required to order additional medical exams unless the existing medical record is insufficient).  Under these circumstances, we find no error in the ALJ's reliance upon the record before him.

**ALJ Error in Failing to Consider Smith's Impairments in Combination:**

The ALJ wrote that the issue was whether Smith was disabled due to "any medically determinable physical or mental *impairment or combination of impairments . . ."* (Tr. 369) (emphasis added).  In making his RFC determination, the ALJ considered Smith's allegation that he was disabled based upon "a combination of physical and mental impairments." (Tr. 375). Having defined disability as he did, the ALJ's finding that Smith was not disabled constitutes a finding that his impairments, either singly or in combination, were considered.  There is no merit to this claim.  Even if there were some omission in this regard, Smith does not suggest how his impairments combine to render him disabled.

In summary, substantial evidence supports the determinations reached by the ALJ.  We are mindful that the Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if we find some evidence to support a different conclusion.  The test

---

[2] E.g., no more than simple, routine and repetitive tasks with supervision that is simple, direct, and concrete; no more than frequent contact with supervisors and coworkers; and no more than occasional contact with the general public.

is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is amply satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Berryhill is affirmed and Smith's complaint is dismissed with prejudice.

IT IS SO ORDERED this 26th day of February, 2018.

_____
UNITED STATES MAGISTRATE JUDGE